United States District Court
Southern District of Texas

**ENTERED**

August 29, 2018

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| AMANDA CLEMENTS; KATHERINE | § | |
| ANGUS; RANDALL LESLIE; | § | |
| CLINTON PERRY; EDUARDO LUCIO; | § | |
| STEVEN LOSS; MELISSA FIKES; and | § | |
| DALE CARMAN; individually, and on | § | |
| behalf of all others similarly situated | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:17-CV-00237 |
| | § | |
| TRANS UNION, LLC; TXU ENERGY | § | |
| RETAIL CO., LLC; and EXPERIAN | § | |
| INFORMATION SOLUTIONS, INC.; | § | |
| and JOHN DOES 1-25 | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

Pending before the Court are Trans Union LLC's Motion to Dismiss Plaintiffs'

Third Amended Class Action Complaint ("Trans Union's Motion to Dismiss"),

Defendant Experian Information Solutions, Inc.'s Motion to Dismiss Plaintiffs' Third

Amended Class Action Complaint ("Experian's Motion to Dismiss"), and Defendant

Experian Information Solutions, Inc.'s Motion to Strike Exhibits Attached to Plaintiffs'

Response in Opposition to Motion to Dismiss ("Experian's Motion to Strike")[1].  Dkts. 61,

62, 72.  Having considered the motions, responses, replies, and applicable law, the Court

recommends that Trans Union's Motion to Dismiss and Experian's Motion to Dismiss be

---

[1] All dispositive pretrial motions in this case have been referred to this Court for report and
recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  Dkt. 79.

DENIED IN PART AND GRANTED IN PART.  The Court further recommends that Experian's Motion to Strike be GRANTED.  The Court's reasoning is detailed below.

## I. BACKGROUND

Trans Union LLC ("Trans Union") and Experian Information Solutions, Inc. ("Experian") are credit reporting agencies engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purposes of furnishing consumer reports.  Plaintiffs Amanda Clements, Katherine Angus, Randall Leslie, Eduardo Lucio, Steven Loss, Perry Clinton, Dale Carman, and Melissa Fikes (collectively "Plaintiffs") claim Trans Union and Experian (collectively, the "Credit Reporting Defendants") reported old and obsolete information on credit reports about delinquent accounts Plaintiffs previously had with TXU Energy Retail Company, LLC ("TXU").  According to the Third Amended Class Action Complaint and Demand for Jury Trial ("Complaint"), each of the TXU accounts was more than seven-and-a-half years old, beyond the time period that the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") permits these accounts to be reported.  Plaintiffs allege that the Credit Reporting Defendants "have failed to follow reasonable procedures to assure maximum possible accuracy in its reporting of antedated TXU trade lines.  If [the Credit Reporting Defendants] had proper procedures in place, they would not allow antedated trade lines to report . . . on credit reports over seven years and six months from the original delinquency date."  Dkt. 59 at 2.

Plaintiffs specifically allege claims against the Credit Reporting Defendants for violating FCRA under (1) section 1681c(a)(4) (for reporting old and obsolete information

on Plaintiffs' credit report for longer than the statutory period allows); (2) section 1681e (for failure to follow reasonable procedures to assure maximum possible accuracy of a credit report and avoid violations of section 1681c); and (3) section 1681i (for failure to conduct a reasonable investigation in response to any consumer dispute of information appearing in that consumer's credit file). The Credit Reporting Defendants now move to dismiss the case under FED. R. CIV. P. 12(b)(1) and 12(b)(6).[2]

## II. LEGAL STANDARDS

**Rule 12(b)(1):** A court must dismiss a suit for lack of subject matter jurisdiction under Rule 12(b)(1) where it lacks the statutory or constitutional power to adjudicate the case. *See Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Subject matter jurisdiction fails if the plaintiff lacks Article III standing. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541–42 (1986). Therefore, when a plaintiff lacks standing to sue in federal court, it is appropriate to dismiss the action pursuant to Rule 12(b)(1) for want of subject matter jurisdiction. *See Chair King, Inc. v. Hous. Cellular Corp.*, 131 F.3d 507, 509 (5th Cir. 1997).

**Rule 12(b)(6):** A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This pleading standard does not require "detailed factual allegations, but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). Under Rule 12(b)(6), a party may "move for

---

[2] TXU is also a defendant in this case, but it has not moved for dismissal at this time.

dismissal for a failure to state a claim upon which relief can be granted." *Lemieux v. Am. Optical Corp.*, 712 F. App'x 409, 412 (5th Cir. 2018) (internal quotation marks omitted). "The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true." *Lowrey v. Tex. A&M Univ. Syst.*, 117 F.3d 242, 247 (5th Cir. 1997) (citation omitted). Dismissal is appropriate "when a plaintiff fails to allege sufficient facts that, taken as true, state a claim that is plausible on its face." *Amacker v. Renaissance Asset Mgmt. LLC*, 657 F.3d 252, 254 (5th Cir. 2011) (citation omitted). However, "[m]otions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citation and internal quotation marks omitted). "Significantly, a complaint may proceed even if recovery is very remote and unlikely, so long as the alleged facts raise a right to relief above the speculative level." *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018) (quoting *Twombly*, 550 U.S. at 555–56).

### III.  MOTION TO STRIKE EXHIBITS

Before turning to the motions to dismiss, the Court will address the Credit Reporting Defendants' objections to various exhibits attached by Plaintiffs to their responses in opposition to the Credit Reporting Defendants' motions to dismiss. The documents at issue can be divided into two categories: (1) a group of documents that Plaintiffs assert are excerpts from Plaintiffs' credit reports issued by the Credit Reporting

Defendants (the "Credit Report/File Documents");[3] and (2) excerpts from a deposition transcript of an Experian employee in a separate lawsuit (the "Deposition Transcript).[4]

In determining whether to grant a motion to dismiss, it is well-settled that, in general, a district court may not "go outside the complaint." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). A district court may, however, consider documents in connection with a motion to dismiss if they are referenced in the plaintiff's complaint and are central to the plaintiff's claim. *See id.*

As far as the Credit Report/File Documents are concerned, the Credit Reporting Defendants object to the consideration of these documents on the basis that (1) the documents were not attached to or incorporated by reference in the Complaint; and (2) the documents are not, as Plaintiffs claim, excerpts from the credit *reports* referenced in the Complaint, but rather are excerpts from credit *files*.[5] Although Plaintiffs did not attach the full credit reports to the Complaint, the lawsuit clearly refers to the Plaintiffs' credit reports. As such, it is fair game for the Court to consider the contents of the credit *reports* referenced in the Complaint for the purposes of deciding the motions to dismiss. The problem here, however, is that the parties fundamentally disagree on whether the attached documents are excerpts from credit *files* or credit *reports*. Now is not the time

---

[3] This would include Exhibits A and B attached to Plaintiffs' Response, Brief and Memorandum of Law in Opposition to Trans Union's Motion to Dismiss (Dkts. 68-1, 68-2); and Exhibits A, B, and C attached to Plaintiffs' Response, Brief and Memorandum of Law in Opposition to Experian's Motion to Dismiss (Dkts. 67-1, 67-2, 67-3).

[4] The deposition excerpts are from the deposition of Douglas Hollon, an Experian employee, taken in a similar case pending in Louisiana federal court.

[5] As discussed in this opinion below, credit *reports* and credit *files* are very different terms with different meanings that cannot be used interchangeably.

for the Court to make that evidentiary determination, especially when the Court possesses no evidence by which to make such a ruling.  Therefore, the Court will sustain the Credit Reporting Defendants' objections to the Credit Report/File Documents and does not consider them for purposes of the motions to dismiss.

The Court will also sustain the Credit Reporting Defendants' objection to considering the Deposition Transcript in connection with the motions to dismiss.  The Deposition Transcript falls squarely within the long standing rule that a district court cannot consider material outside the complaint in deciding a motion to dismiss.  *See Scanlan*, 343 F.3d at 536.  That rule applies whether the supplemental material is offered by a plaintiff (as in this case) or a defendant.

Therefore, Experian's Motion to Strike is GRANTED.

## IV. LEGAL ANALYSIS

Although Trans Union and Experian have filed separate motions to dismiss, the legal arguments raised in both motions are substantially the same.  Accordingly, the Court will address both motions at the same time.

## A.    Standing

The Credit Reporting Defendants ask the Court to dismiss the Complaint due to a lack of subject matter jurisdiction, contending that Plaintiffs have failed to properly allege that they have standing to bring their claims.

The issue of standing presents a "threshold jurisdictional question" in any lawsuit filed in federal district court.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998).  The requirement that a party have standing to bring suit flows from Article III of

the Constitution, which limits the scope of the federal judicial power to the adjudication of "cases" or "controversies."   U.S. CONST. art. III, § 2.   "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitations of federal-court jurisdiction to actual cases or controversies.'" *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976)).

To establish standing under Article III, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."   *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

The Supreme Court recently addressed the standing inquiry under the FRCA in *Spokeo, Inc. v. Robins*.  136 S. Ct. 1540 (2016).  In *Spokeo*, the Supreme Court held that a plaintiff must allege a concrete and particularized injury that goes beyond a "bare procedural violation, divorced from any concrete harm" because a "violation of one of the FCRA's procedural requirements may result in no harm."  *Id.* at 1549–50.  Although the Supreme Court has expressly held that a violation of FCRA procedural requirements, by itself, is insufficient to provide standing, Plaintiffs in this case do not rely solely on a procedural violation of the statute.   It is undisputed that Plaintiffs allege (at a bare minimum) that their credit score has been negatively impacted by the actions of the

Credit Reporting Defendants.  In response, Credit Reporting Defendants argue that a reduced credit score, without resulting damages, does not establish an injury for standing purposes.  It is true that a reduced credit score, without resulting damages, is insufficient to constitute actual damages for purposes of the FCRA.  *See Young v. Harbor Motor Works, Inc.*, No. 2:07-CV-31 JVB, 2009 WL 187793, at *5 (N.D. Ind. Jan. 27, 2009). But the injury-in-fact standing analysis presents a much different inquiry than a damages analysis under the FCRA.  *See Adams v. Fifth Third Bank*, No. 3:16-CV-00218-TBR, 2017 WL 561336, at *7 (W.D. Ky. Feb. 9, 2017) ("Whether a plaintiff's alleged damages meet the pleading standard required for the particular claim at issue is a separate and distinct inquiry from whether a plaintiff's harm constitutes an Article III injury-in-fact."). In short, the Court concurs with the reasoning provided by an Illinois District Court addressing the same issue:

> [T]he Court agrees with [Plaintiff] that a depleted credit score is sufficient to constitute an injury-in-fact for the purposes of establishing Article III standing.  Credit scores are of great importance in our economy, and a depleted credit score could affect a consumer in numerous ways, inflicting harm that often may be difficult to prove or quantify.  Congress has the power to discourage the needless depletion of consumers' credit scores even when the depleted score cannot be neatly tied to a financial harm. While discovery may well show that [Plaintiff] did not suffer any actual damages as a result of his lower credit score, at this preliminary stage, his allegations are sufficient to establish Article III injury-in-fact.

*Santangelo v. Comcast Corp.*, 162 F. Supp. 3d 691, 698 (N.D. Ill. 2016).  *See also Adams*, 2017 WL 561336, at *4 ("Plaintiffs' allegations of lower credit scores, taken as true for the purposes of Fifth Third's motion for judgment on the pleadings, are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III."); *Green*

8

*v. RentGrow, Inc.*, No. 2:16-cv-421, 2016 WL 7018564, at *8 (E.D. Va. Nov. 10, 2016), *adopted by* 2016 WL 7031281 (E.D. Va. Nov. 30, 2016) ("Although some courts have decided that an allegation of a decrease in credit score does not sufficiently state a claim for damages, . . . a decrease in credit score may still establish an injury in fact sufficient to confer standing.").

Accordingly, the Court holds that, at this initial stage, Plaintiffs have sufficiently alleged Article III standing to proceed with this lawsuit.

**B.     Section 1681c(a)(4)**

Section 1681c(a)(4) provides that a consumer reporting agency may not make a consumer report containing "[a]ccounts placed for collection or charged to profit and loss which antedate the report by more than seven years."  The gravamen of Plaintiffs' lawsuit is that the Credit Reporting Defendants have violated this provision by reporting debts on credit reports longer than the law allows.

In seeking to dismiss this claim, the Credit Reporting Defendants contend that Plaintiffs' proposed Class A definition is improper because it contains the incorrect legal standard for determining the class time period.[6]  To fully understand the Credit Reporting Defendants' argument, the Court must provide some context for how the FCRA operates.

Enacted in 1970, the FCRA's purpose is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer

---

[6] This class action lawsuit is brought on behalf of two distinct classes.  Class A is defined as: "All natural persons residing in the State of Texas, beginning two years prior to the filing of this Complaint and continuing through the resolution of this action, whose TU and Experian credit reports contained a TXU trade line with a date of last payment that is more than seven years and six months from the date of the reporting."  Dkt. 59 at 19.

9

credit . . . information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b).  "The Act defines a complex set of rights and obligations that attend the relationships among and between the provider of a credit report, the user of that information and the consumer who is made the subject of such a report."  *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998).

To protect consumers from having their credit forever impaired by aging debts, credit reporting agencies are precluded from reporting accounts which have been "placed for collection" or "charged to profit and loss" more than seven years prior to the report.  § 1681c(a)(4).  "The seven year period begins to run 180 days after the account is placed in collection or charged off by the creditor so the effective result is a seven and one-half year period from the original delinquency."  *Gillespie v. Equifax Info. Servs., LLC*, 484 F.3d 938, 940–41 (7th Cir. 2007) (citing 15 U.S.C. § 1681c(c)(1)).

The FCRA provides that the seven and one-half year period is calculated "beginning on the date of the commencement of the delinquency."  § 1681c(c).  The Credit Reporting Defendants argue that the proposed Class A definition fails to use the correct statutory language to allege a violation because it refers to the start of the class period as occurring "on the date of last payment."  On the flip side, Plaintiffs contend that the Credit Reporting Defendants are playing semantics, noting "the Complaint specifically alleges that the delinquency date is . . . the first month after the Plaintiffs' last payment date (i.e., the first month that the Plaintiffs missed a payment on their accounts)."  Dkt. 67 at 11.  At oral argument, both sides agreed that the statutory scheme

clearly defines how the seven and one-half year period should be calculated.  Instead of disputing the legal requirements at play, the parties appear to fundamentally disagree on what the true facts are and how they help determine the "date of the commencement of the delinquency."  That question is not one the Court will decide at the motion to dismiss stage.  It is best left for another day.

The Fifth Circuit has held that "[w]here it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings."  *John v. Nat'l Sec. Fire and Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007).  This is not such a case.  Here, it is far from clear from simply reading the Complaint that the class definition is legally impossible.  Given the relatively early stage of the proceedings, it is premature to determine whether this case should proceed as a class action.  The Court reserves a ruling on the appropriateness of the class definition until a class certification motion is ripe for consideration.

The Credit Reporting Defendants next argue that Plaintiffs' generalized allegations do not contain facts sufficient to determine whether or not Plaintiffs' claims are exempted by section 1681c(b), which expressly permits the reporting of certain high value transactions beyond the seven and one-half year period.  Specifically, section 1681c(b) allows a credit reporting agency to report transactions beyond the seven and one-half year period when the credit reports are being used in connection with (1) credit transactions involving, or which may reasonably be expected to involve, a principal amount of $150,000 or more; (2) the underwriting of life insurance involving, or which may reasonably be expected to involve, a face amount of $150,000 or more; or (3) the

employment of any individual at an annual salary which equals, or which may reasonably be expected to equal $75,000 or more.  *See* § 1681c(b).   Plaintiffs fail to specifically plead that none of these exemptions apply in this case.  According to the Credit Reporting Defendants, this omission is fatal and should result in dismissal of all claims.

The Court finds this position too slick, elevating form over substance.  It defies logic that a plaintiff alleging a violation of FCRA has to allege the inapplicability of each and every exception to the statute.  *See Molloy v. Primus Auto. Fin. Servs.*, 247 B.R. 804, 821 (C.D. Cal. 2000) (the Complaint, however, need not plead "the inapplicability of every exception to [the debt collector] definition.").  FED. R. CIV. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Here, Plaintiffs have certainly given the Credit Reporting Defendants fair notice of what the claim is and the grounds upon which it rests.  Indeed, the Complaint clearly alleges that Credit Reporting Defendants wrongfully continued to report obsolete accounts from TXU, well after those accounts should have been removed.  As such, it is implicit in the Complaint's allegations that the exceptions are inapplicable here.  In sum, Plaintiffs' allegations satisfy the notice pleading requirements set forth Rule 8(a)(2), and that is all that is required at this stage.

## C.    Section 1681i

Plaintiffs further allege that the Credit Reporting Defendants have violated § 1681i(a)(1)(A).  Section 1681i(a)(1)(A) requires a credit reporting agency to conduct a reasonable investigation in response to any consumer dispute of information appearing on that consumer's credit *file*.  Section 1681i(a)(1)(A) specifically provides as follows:

12

> [I]f the completeness or accuracy of any item of information contained in a **consumer's file** at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

(emphasis added).

At the outset, it is important to clarify that there is a sharp distinction between a credit *file* and a credit *report*.  The two terms cannot be used interchangeably.  A credit *file* means "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored."  § 1681a(g).   In contrast, FCRA defines a credit *report* as follows:

> [A]ny written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title.

§ 1681a(d)(1)(A)–(C).   To summarize in simple terms, the credit file is all the information about a consumer in the possession, custody, and control of a consumer reporting agency. A credit report, on the other hand, is only the specific credit information about an individual that is provided to a third-party.

Plaintiffs contend that that the Credit Reporting Defendants failed to conduct a proper investigation.  Had a proper investigation been performed, Plaintiffs argue, the

Credit Reporting Defendants should have determined that the information they provided to third parties on credit *reports* exceeded the time limitations set forth in section 1681c. As noted above, section 1681c prohibits credit reporting agencies from reporting certain information in a credit *report* after seven and one-half years.

Plaintiffs' section 1681i claims are premised on the idea that the consumer reporting agencies violated the statute by failing to remove outdated information from the credit *reports* provided to third parties.  The problem with Plaintiffs' position is that section 1681i does not apply to credit *reports*.  It only applies to credit *files*.  There is no requirement anywhere in FCRA that requires a consumer reporting agency to remove outdated information from a credit *file*.

Meanwhile, section 1681c is titled "Requirements relating to information contained in consumer *reports*." (emphasis added).  As its title reflects, section 1681c is limited to a credit reporting agency's obligation to not include certain information in a credit *report*.  Importantly, this statutory provision does not set any limitations whatsoever as to what information can be included in a credit *file*.

In short, Plaintiffs' allegations related to section 1681i are wholly derived from the Credit Reporting Defendants' alleged violation of section 1681c, which sets the reporting period for certain negative information on a credit *report*—not a credit *file*.  As such, Plaintiffs cannot pursue a section 1681i claim based on alleged inclusion of outdated consumer information since there is no requirement in the statute that credit *files* only include information less than seven and one-half years.  The Court recommends Plaintiffs' section 1681i claim be dismissed.

D.     **Section 1681e**

Plaintiffs also bring a claim against the Credit Reporting Defendants under section 1681e of the FCRA.  Section 1681e(a) requires a consumer reporting agency to "maintain reasonable procedures designed to avoid violations of section 1681c of this title . . . ."  Section 1681e(b) mandates that a consumer reporting agency must "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

The Credit Reporting Defendants argue that the Plaintiffs' section 1681e claims should be dismissed because Plaintiffs have failed to plead that the Credit Reporting Defendants published a credit report containing an inaccuracy to a third party.  This argument is unavailing since the Complaint specifically alleges that the Credit Reporting Defendants reported obsolete TXU accounts on credit reports provided to third parties.  The Complaint alleges: "Plaintiffs' credit reports and file have been obtained from credit reporting agencies and have been reviewed by known and unknown, prospective and existing credit grantors and extenders of credit, and the inaccurate information reported by [Trans Union] and Experian is continuing to damage the Plaintiff's [sic] credit rating." Dkt. 59 at 18.  The Credit Reporting Defendants maintain that this language is inadequate to identify which consumer reporting agency provided the consumer report and to whom they were provided.

As discussed already in this opinion, FED. R. CIV. P. 8(a)(2) requires a plaintiff to provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of this rule is to "give the defendant fair notice of what the . . . claim

is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The Complaint does that, giving the Credit Reporting Defendants sufficient notice that Plaintiffs are challenging the inclusion of obsolete information in the credit reports distributed by the Credit Reporting Defendants. Although the Complaint does not identify every third party to whom the credit reports were provided, it provides sufficient notice that those who did review the credit reports were both existing and prospective "grantors and extenders of credit." Dkt. 59 at 18. Mindful that "FCRA is to be liberally construed in favor of the consumer," the Court finds that these allegations are sufficient for Rule 12(b)(6) purposes. *Wagner v. TRW, Inc.*, No. 97-30601, 1998 WL 127812, at *1 (5th Cir. Mar. 4, 1998) (citation omitted).

Experian makes one additional argument that Trans Union does not advance. Experian claims that Plaintiffs' "allegations do not include any reference to an **inaccuracy** in Plaintiffs' credit entries. The only issue identified by Plaintiffs is that Experian did not cease reporting their TXU accounts early enough." Dkt. 62 at 15 (emphasis in original). Experian's argument is not persuasive. A credit entry is "inaccurate" within the meaning the FCRA if (1) "it is patently incorrect," or (2) it "is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Sepulvado*, 158 F.3d at 895. The FCRA clearly prohibits a consumer reporting agency from including information about an account that is more than seven-and-a-half years old in a consumer report. § 1681c(a)(4). A consumer reporting agency that puts such information in a consumer report is, in effect, providing misleading information because it can reasonably "be expected to adversely affect credit decisions."

16

*Sepulvado*, 158 F.3d at 895.  Along those same lines, a credit reporting agency that has an obligation under section 1681e(b) to "assure maximum possible accuracy of the information concerning the individual about whom the report relates" must follow reasonable procedures to assure that outdated information is not included in the consumer report.  Therefore, taking all well-pled facts in the Complaint as true, the Court finds that the Complaint asserts enough facts to permit a reasonable inference to be drawn that the Credit Reporting Defendants included inaccuracies in credit reports for purposes of their section 1681e claim.

**E.     Plaintiffs Adequately Allege Damages (Barely)**

The Credit Reporting Defendants next argue that Plaintiffs' claims must be dismissed because Plaintiffs have failed to allege sufficient facts to support their claims for injuries or damages.

A consumer reporting agency that negligently violates the provisions of the FCRA may be liable to the consumer for actual damages, costs, and attorney's fees.  *See* § 1681o.  "Actual damages may include damages for humiliation or mental distress even if the consumer has suffered no out-of-pocket losses, as well as damages for injury to reputation and creditworthiness." *Cousin v. Trans Union Corp.*, 246 F.3d 359, 369 n.15 (5th Cir. 2001) (citing *Fischl v. Gen. Motors Acceptance Corp.*, 708 F.2d 143, 151 (5th Cir. 1983)).  "[P]laintiff[s] do[] not need to plead [] damages with heightened particularity." *Johnson v. CGR Servs., Inc.*, 04 C 2587, 2005 WL 991770, at *2 (N.D. Ill. Apr. 7, 2005).  "However, the Complaint needs at least to give the other party some notice as to what [the] actual damages could possibly be." *Id.*  At this preliminary stage,

17

the Court must determine whether the Complaint adequately alleges actual damages that would allow Plaintiffs to proceed with itheir FCRA claim.

The Credit Reporting Defendants assert that the Complaint is devoid of any statement of actual damages other than a lower credit score.  As noted above, "a lower credit score, without more, does not constitute an 'actual damage[]' for purposes of the FCRA." *Adams*, 2017 WL 561336, at *7 (quoting § 1681o); *see also Wagner v. BellSouth Telecomm., Inc.*, 520 F. App'x 295, 298–99 (5th Cir. 2013) ("Wagner has made no allegations and provided no evidence of damages she suffered from the credit line reduction, and thus . . . she has no viable economic damages claim."); *Nowlin v. Avis Budget Grp*, No. 1:11CV511, 2011 WL 7087108, at *2 (M.D. N.C. Dec. 22, 2011), *adopted by* 2012 WL 204162 (M.D. N.C. Jan. 24, 2012) ("an alleged decrease in credit score is not sufficient to state a claim for damages").

When it comes to damages, Plaintiffs claim that "[b]ecause of the negligen[t] and/or willful actions of [Trans Union] and TXU, Plaintiffs' credit score[s] ha[ve] been negatively affected."  Dkt. 59 at 18.  Plaintiffs also allege that because Trans Union continued to report Plaintiffs' delinquent accounts, this "old and obsolete information negatively reflects upon the Plaintiffs, the Plaintiffs' credit repayment history, the Plaintiffs' financial responsibility as a debtor and the Plaintiffs' credit worthiness, as well as lowering credit scores."  *Id.*  Furthermore, "Plaintiffs' credit reports and file have been obtained from credit reporting agencies and have been reviewed by known and unknown, prospective and existing credit grantors and extenders of credit, and the inaccurate

information reported by [Trans Union] and Experian is continuing to damage the Plaintiff[s'] credit rating." *Id.*

The ultimate question this Court must answer is whether these allegations merely allege a lower credit score (in which case actual damages have not been sufficiently alleged) or a more substantial, meaningful type of injury (in which case Plaintiffs' affirmative claims for relief survive a motion to dismiss). To be blunt, the Complaint is far from a picture of clarity. This is certainly not the type of case in which it is abundantly clear, at first blush, whether Plaintiffs have satisfied their pleading burden. This Court has to dig deep to determine if Plaintiffs' allegations are sufficient to scrape by at the dismissal stage. Taking all well-pleaded facts as true and viewing those facts in the light most favorable to Plaintiffs, as this Court must do, the Court concludes that Plaintiffs have alleged more than just a lower credit score. Plaintiffs have specifically alleged that the inaccurate information contained in the credit reports has been viewed by both "prospective and existing credit grantors and extenders of credit" and such negative information "is continuing to damage the Plaintiff[s'] credit rating." Dkt. 59 at 18. Read broadly, this language suggests that third-parties have viewed Plaintiffs' credit reports to Plaintiffs' detriment and the negative impact goes beyond lower credit scores to influencing decisions made by those determining whether to extend credit to Plaintiffs. Consequently, the Complaint's allegations are sufficient (just barely) to pass muster. The Court fully recognizes that this is a very liberal reading of the Complaint. Because the Fifth Circuit has recognized that a motion to dismiss under 12(b)(6) "is viewed with disfavor and rarely granted," this Court feels compelled to bend over backwards to avoid

granting a Rule 12(b)(6) motion to dismiss.  *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (internal quotation marks omitted).  At this early stage, the Court is unwilling to dismiss Plaintiffs' claims based on failure to allege injury or damages.  In short, the Court finds that Plaintiffs have made allegations sufficient to put the Credit Reporting Defendants on notice as to any actual damages in this case.

**F.     Plaintiffs Adequately Allege the Credit Reporting Defendants' Conduct Was Both Negligent And Willful.**

The Credit Reporting Defendants next assert that Plaintiffs have failed to adequately allege facts supporting negligent and/or willful conduct.  Under the FCRA, a plaintiff may recover damages when a defendant acted either negligently or willfully in violating the statute's requirements.  *See* §§ 1681o(a)(1) (providing that a plaintiff may recover actual damages in cases of negligent noncompliance), 1681n(a)(1)(A) (providing for statutory damages in cases of willful noncompliance).  To establish that the Credit Reporting Defendants acted willfully, Plaintiffs must show that the CRA Defendants either knowingly or recklessly violated the FCRA.  *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56–57 (2007).  Because the FCRA is not a strict liability statute, a plaintiff must plead factual content that allows the Court to draw the reasonable inference that the Credit Reporting Defendants engaged in negligent or willful misconduct.  *See Thompson v. San Antonio Retail Merchs. Ass'n*, 682 F.2d 509, 513 (5th Cir. 1982).

In a nutshell, the Credit Reporting Defendants contend that the Complaint contains boilerplate recitations of legal standards and fails to provide any specific facts indicating how and when the Credit Reporting Defendants acted negligently and/or willfully.  The

Court fully agrees with the Credit Reporting Defendants that a mere assertion that the Credit Reporting Defendants willfully or negligently violated the FCRA, without more, is not enough to survive dismissal.  *See Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 845 (S.D. Tex. 2011).  Here, however, Plaintiffs have, by the skin of one's teeth, set forth sufficient factual allegations to withstand dismissal.

The Court finds that the Complaint contains more than boilerplate recitations that the Credit Reporting Defendants have violated the statute.  In the Complaint, Plaintiffs allege that, through their attorney, they informed the Credit Reporting Defendants that the information contained in the credit reports was too old, the Credit Reporting Defendants verified the information and, nonetheless, continued to report the obsolete account information.  The Complaint makes hay of the fact that the Credit Reporting Defendants continued to report the outdated information even though they had the account records reflecting the true age of the delinquency.  At this preliminary stage of the case, these allegations are enough to pass muster since "assertions that a defendant was aware of the FCRA, but failed to comply with its requirements, are sufficient to support an allegation of willfulness and to avoid dismissal."  *Singleton v. Domino's Pizza, LLC*, No. DKC 11-1823, 2012 WL 245965, at *4 (D. Md. Jan. 25, 2012).

## V. CONCLUSION AND RECOMMENDATION

For the reasons stated above, the Court recommends that Experian's Motion to Strike be GRANTED and Trans Union's Motion to Dismiss and Experian's Motion to Dismiss be DENIED IN PART AND GRANTED IN PART.  More specifically, the

Court recommends that Plaintiffs' section 1681i claim be dismissed.  In all other respects, Trans Union's Motion to Dismiss and Experian's Motion to Dismiss are DENIED.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 29th day of August, 2018.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE