United States District Court
Southern District of Texas
**ENTERED**
May 09, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| AMANDA CLEMENTS; KATHERINE ANGUS; RANDALL LESLIE; CLINTON PERRY; EDUARDO LUCIO; STEVEN LOSS; MELISSA FIKES; and DALE CARMAN; individually, and on behalf of all others similarly situated | § § § § § § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. 3:17-CV-00237 |
| TRANS UNION, LLC; TXU ENERGY RETAIL CO., LLC; and EXPERIAN INFORMATION SOLUTIONS, INC.; and JOHN DOES 1-25 | § § § § § § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the Court is Defendants' Joint Motion for Summary Judgment and Motion to Dismiss Pursuant to Rule 12(b)(1) ("Defendants' Motion for Summary Judgment"). Dkt. 133. Having considered the motion, response, reply, and applicable law, the Court recommends that Defendants' Motion for Summary Judgment be GRANTED.

### BACKGROUND

Plaintiffs Amanda Clements, Randall Leslie, Steven Loss, Perry Clinton, Dale Carman, and Melissa Fikes (collectively, "Plaintiffs") are individuals who had accounts with TXU Energy Retail Company, LLC ("TXU") during and before 2009.[1] Defendants

---

[1] Originally a defendant in this case, TXU was recently dismissed with prejudice and is no longer involved in this lawsuit. *See* Dkt. 144.

Trans Union LLC ("Trans Union") and Experian Information Solutions, Inc. ("Experian") are credit reporting agencies engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purposes of furnishing credit reports.

In the Third Amended Class Action Complaint and Demand for Jury Trial ("Complaint"), Plaintiffs allege that Trans Union and Experian (collectively, "Defendants") were reporting Plaintiffs' delinquent TXU accounts for more than seven and one-half years—beyond the time period that the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), permits these accounts to be reported. Plaintiffs specifically allege claims against Defendants for violating the FCRA under (1) Section 1681c(a)(4) (for reporting old and obsolete information on Plaintiffs' credit report for longer than the statutory period allows); (2) Section 1681e (for failure to follow reasonable procedures to assure maximum possible accuracy of a credit report and avoid violations of Section 1681c); and (3) Section 1681i (for failure to conduct a reasonable investigation in response to any consumer dispute of information appearing in that consumer's credit file). At the motion to dismiss stage, the Court dismissed Plaintiffs' Section 1681i claim, but allowed the other claims to proceed.

Discovery has taken place and Defendants have now moved to dismiss under Rule 12(b)(1) and for summary judgment under Rule 56.[2] The relevant facts are not in dispute.

---

[2] Defendants incorporate Docket 111, Appendix in Support of Defendants' Joint Response in Opposition to Plaintiffs' Motion to Certify Class, into Defendants' Motion for Summary Judgment. Because Docket 111 is redacted, the Court will rely on Docket 112-3, the sealed and unredacted version of Docket 111. The parties have agreed that the Court may rely on Docket 112-3 in place of Docket 111.

The parties agree that TXU provided two kinds of information to Defendants relating to Plaintiffs' delinquent accounts. First, TXU reported the "Date of First Delinquency" for each Plaintiff, calculating the date each Plaintiff's final bill was due. Second, TXU reported a "Date of Last Payment" for each Plaintiff, identifying when each Plaintiff last made a payment on his/her account.

Defendants use the Date of First Delinquency provided by TXU to determine when to stop reporting delinquent accounts on credit reports. As explained in Defendants' Motion for Summary Judgment:

Dkt. 137 at 11 (citations omitted). As a result of these policies, none of the Plaintiffs had a TXU account reported for longer than seven and one-half years after their respective Date of First Delinquency.[3]

Defendants did not utilize the Date of Last Payment provided by TXU. This is fortunate, as TXU inadvertently reported an incorrect Date of Last Payment for each

---

3

3

Plaintiff. The Date of Last Payment provided by TXU for each Plaintiff was much earlier in time than it should have been. An affidavit from the Senior Manager of Credit and Collections at TXU explained how this occurred:

> Beginning in late 2008 and continuing through the first half of 2009, TXU migrated from its old legacy data system to its current customer relationship management system ("CRM system"). This involved migrating all of the then-current accounts to the new CRM system. TXU did discover that there was an issue with the migration where certain accounts were updated with the wrong "Date of Last Payment." Specifically, the issue potentially caused an incorrect "Date of Last Payment" to be reported to the credit bureaus for customers who had accounts during and before 2009. This issue did not, however, impact in any way the "Date of First Delinquency" reported to the credit bureaus for any consumer of TXU services and did not have affected [sic] when an item should be removed from a consumer report.

Dkt. 112-3 at 15. In connection with this lawsuit, Defendants have provided the Court with the correct date that each Plaintiff made his/her last payment to TXU ("Corrected Date of Last Payment"). Importantly, each Corrected Date of Last Payment is within seven and one-half years from the date each Plaintiffs' TXU account was removed from the credit files at Trans Union and Experian.

The following chart provides the relevant dates for each Plaintiff:

| Plaintiff | Corrected Date of Last Payment | Date of First Delinquency | Removed from Trans Union credit file | Removed from Experian credit file | Reported for more than 7 years, 180 days |
|---|---|---|---|---|---|
| Amanda Clements | 1/7/2011 | 2/28/2011 | 8/25/2017 | 12/16/2017 | No |
| Randall Leslie | 8/6/2010 | 10/4/2010 | 9/3/2017 | N/A[4] | No |
| Clinton Perry | 10/19/2010 | 11/8/2010 | 10/12/2017 | N/A[4] | No |
| Steven Loss | 9/2/2011 | 12/12/2011 | 9/6/2018 | 7/12/2018 | No |
| Melissa Fikes | 4/26/2013 | 5/13/2013 | To be removed April 2020 | To be removed Feb. 2020 | No |

This chart demonstrates that it does not matter whether the clock starts ticking on the Corrected Date of Last Payment or the Date of First Delinquency. In both cases, none of Plaintiffs' delinquent accounts have been reported beyond the seven and one-half years permitted by statute.

Given these undisputed facts, it is no surprise that Plaintiffs readily acknowledge that none of Plaintiffs' TXU accounts were reporting for more than seven and one-half years:

> Mr. Zelman: So now, with all the information that we have in front of us, it all come together at this point here now, I don't think there's a plaintiff, based on what they've shown us now in their declarations, that have last past the statutory period.

---

[4] Experian did not furnish credit reports for Randall Leslie or Clinton Perry. In the Complaint, these two individuals only assert claims against Trans Union (not Experian).

Dkt. 133-2 at 2. *See also* Dkt. 133-3 at 4–5 (acknowledging "that the information was not being disclosed for more than seven years, seven months").

## RULE 12(b)(1)

Defendants contend that although Plaintiffs filed suit under Sections 1681c and 1681e of the FCRA, the discovery process has revealed that Plaintiffs do not possess the facts necessary to support those claims. Defendants argue that without such facts, "Plaintiffs cannot allege they suffered an injury in fact," and thus, "Plaintiffs do not have standing to bring their claims in this Court." Dkt. 133 at 22.

### A.  RULE 12(B)(1) STANDARD

A court must dismiss a suit for lack of subject matter jurisdiction under Rule 12(b)(1) where it lacks the statutory or constitutional power to adjudicate the case. *See Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Subject matter jurisdiction fails if the plaintiff lacks Article III standing. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541–42 (1986). Therefore, when a plaintiff lacks standing to sue in federal court, it is appropriate to dismiss the action pursuant to Rule 12(b)(1) for want of subject matter jurisdiction. *See Chair King, Inc. v. Hous. Cellular Corp.*, 131 F.3d 507, 509 (5th Cir. 1997). In other words, district courts "should consider . . . Rule 12(b)(1) jurisdictional attack[s] before addressing any attack on the merits." *In re FEMA Trailer Formaldehyde Prod. Liab. Litig. (Miss. Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012) (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

In deciding whether to dismiss pursuant to Rule 12(b)(1), a court may view: "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. Heeremac V.O.F.*, 241 F.3d 420, 424 (5th Cir. 2001) (citation omitted). "However, when factual allegations are intertwined with the merits, i.e. where the allegations shed light on both the basis of federal court subject matter jurisdiction and the cause of action, a court should not dismiss the claims unless they are 'immaterial or wholly insubstantial and frivolous.'" *Abdullahi v. Lowe*, No. 1:17-CV-068, 2017 WL 4329634, at *1 (S.D. Tex. Aug. 14, 2017) (quoting *Clark v. Tarrant Cty.*, 798 F.2d 736, 741 (5th Cir. 1986)). "Claims are only insubstantial and frivolous where they have no plausible foundation or are clearly foreclosed by a prior Supreme Court decision." *Short v. Glover*, No. 6:03-CV-324, 2003 WL 22479620, at *1 (E.D. Tex. Nov. 3, 2003) (internal quotation marks and citation omitted). "Thus, in cases . . . where the defendant[s] attack[] an essential element of the [plaintiffs'] federal claim[s]," *id.*, the Court should "find that jurisdiction exists and deal with the [challenge] as a direct attack on the merits of [the plaintiffs'] case." *Neutron Depot, LLC v. Bankrate, Inc.*, No. 2:15-CV-101, 2016 WL 4721437, at *2 (S.D. Tex. Sept. 9, 2016) (quoting *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981)).

**B. RULE 12(B)(1) ANALYSIS**

Here, Plaintiffs have alleged claims under the FCRA. There is nothing to suggest that Plaintiffs' claims are clearly foreclosed by a Supreme Court decision or that their claims have no plausible foundation. To the contrary, Defendants purported subject matter

7

jurisdiction argument is that Plaintiffs cannot demonstrate that they suffered an actual harm because the *actual* facts in this case—as opposed to the alleged facts—do not reveal a harm. This is because, Defendants argue, the only harm occasioned by violations of the FCRA is the statutory penalty associated with such violations. In other words, Defendants simply attack the merits of Plaintiffs' claims rather than the Court's jurisdiction. The Court, therefore, rejects Defendants' Rule 12(b)(1) argument, concludes that it has subject matter jurisdiction, and turns to Defendants' contention that summary judgment is appropriate.

## SUMMARY JUDGMENT

Defendants contend they are entitled to summary judgment on all of Plaintiffs' claims for two reasons. First, Defendants argue that because "Plaintiffs now openly admit that none of the Defendants violated § 1681c . . . [t]here is no genuine dispute relating to these material facts." Dkt. 137 at 19. Second, Defendants contend that "the express and sole basis for [Plaintiffs'] § 1681e(a) and § 1681e(b) claims—and any purported damages caused by those claims—has been definitively proven and admitted to be false." *Id.* at 21. The Court will explore each of these arguments separately.

### A.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact does not exist unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016) (citation omitted). "The moving party . . . bears the initial responsibility of informing the district court of the basis for its motion."

*Brandon v. Sage Corp.*, 808 F.3d 266, 269–70 (5th Cir. 2015) (citation omitted). If the burden of production at trial "ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 310–11 (5th Cir. 2017) (citation omitted). "Once a party meets the initial burden of demonstrating that there exists no genuine issue of material fact for trial, the burden shifts to the non-movant to produce evidence of the existence of such an issue for trial." *Brandon*, 808 F.3d at 270 (quoting *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010)). The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. [It] must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment." *Id.* (internal quotation marks and citations omitted). "In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party." *Rayborn v. Bossier Par. Sch. Bd.*, 881 F.3d 409, 414 (5th Cir. 2018) (internal quotation marks and citations omitted).

B.  SUMMARY JUDGMENT ANALYSIS

    1.  Section 1681c(a)(4)

To protect consumers from having their credit forever impaired by aging debts, credit reporting agencies are precluded by Section 1681c from reporting accounts which have been "placed for collection" or "charged to profit and loss" more than seven years prior to the report. 15 U.S.C. § 1681c(a)(4). "The seven year period begins to run 180 days after the account is placed in collection or charged off by the creditor so the effective

result is a seven and one-half year period from the original delinquency." *Gillespie v. Equifax Info. Servs., LLC*, 484 F.3d 938, 940–41 (7th Cir. 2007) (citing 15 U.S.C. § 1681c(c)(1)).

The FCRA provides that the seven and one-half year period is calculated "beginning on the date of the commencement of the delinquency." 15 U.S.C. § 1681c(c)(1). Defendants argue that the "commencement of the delinquency" begins on the Date of First Delinquency that is reported to them by TXU. In their summary judgment response, Plaintiffs take no position on when the "commencement of the delinquency" begins. In previous submissions in this case, Plaintiffs argued that the "commencement of the delinquency" begins "the first month after the Plaintiffs' last payment date (i.e., the first month that the Plaintiffs missed a payment on their accounts)." Dkt. 67 at 11. Fortuitously, this information is readily available. Defendants have provided the Court with a Corrected Date of Last Payment for each Plaintiff, identifying the month in which each Plaintiff made their last payment to TXU.

To establish a Section 1681c violation, Plaintiffs must demonstrate that their delinquent accounts appeared on their credit reports for more than seven and one-half years. Plaintiffs cannot do so. As the above chart shows, and Plaintiffs openly admit, Plaintiffs' TXU accounts were not reported for longer than seven years and 180 days in violation of Section 1681c. It does not matter whether the Court uses the Date of First Delinquency, as requested by Defendants, or the Corrected Date of Last Payment, as suggested by Plaintiffs. Under either approach, Plaintiffs cannot demonstrate that Plaintiffs' TXU reports were reported for longer than the seven and one-half years as

specified in Section 1681c. To the contrary, the uncontroverted summary judgment evidence establishes that Defendants removed the derogatory TXU accounts within the seven and one-half year statutory period. *See* Dkt. 112-3 at 219 ("None of the Plaintiffs' TXU accounts reported for longer than 7 years, 180 days from the Date of First Delinquency."); *id.* at 234 ("None of the Plaintiffs' TXU accounts reported for longer than the 7 years, 180 days (from the Date of First Delinquency) permitted by § 1681c."). As such, there is no genuine dispute of material fact. Defendants are entitled to summary judgment on Plaintiffs' Section 1681c claim.

**2.     Section 1681e**

**a.     1681e(a)**

Section 1681e(a) requires every consumer reporting agency to "maintain reasonable procedures designed to avoid violations of section 1681c of this title." 15 U.S.C. § 1681e(a). A credit reporting agency that negligently or willfully violates the provisions of Sections 1681e(a) or 1681e(b) is potentially liable for actual damages, costs, attorney's fees, and punitive damages. *See* 15 U.S.C. § 1681o; § 1681n.

Plaintiffs allege in the Complaint that Defendants violated Section 1681e(a) because "[w]ere T[rans Union] and Experian to have maintained reasonable procedures, they would have discovered that the TXU trade line exceeds the seven years pursuant to 1681(c)(a)(4)." Dkt. 59 at 24. Plaintiffs' position has fundamentally changed since this lawsuit was initiated. Now, Plaintiffs admit that their TXU accounts were removed before the end of the allowable reporting period under Section 1681(c)(a)(4). As a result, Plaintiffs' 1681e(a) claim, like Plaintiffs' Section 1681c claim, fails as matter of law.

11

### b. 1681e(b)

Section 1681e(b) mandates that a consumer reporting agency must "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Although Plaintiffs admit that "Defendants did not report [Plaintiffs' TXU accounts] for more than seven-and-a-half years," Plaintiffs nonetheless argue that they can establish a claim under Section 1681e(b). Dkt. 143 at 7. To this end, Plaintiffs allege Defendants violated Section 1681e(b) for the following reasons:

> Because of the Defendants' failure to have reasonable procedures in place to catch the inaccurate 'Date of First Delinquency' reported by TXU, both of the Defendants used this inaccurate 'Date of First Delinquency' to calculate when to purge the Plaintiffs' accounts from their credit files. As a direct result, these accounts were reported by the Defendants longer than they otherwise would have been. Said otherwise, if the Defendants would have used the proper (and earlier) Date of First Delinquency, then these negative TXU accounts would have been removed from the Plaintiffs' credit files weeks or months earlier.

*Id.* at 7–8. According to Plaintiffs, "even if the inaccurate 'Date of First Delinquency' will not cause the account to be reported for longer than the statutorily-permitted time frame, it will still cause the account to be reported longer than they otherwise would have been reported by these two Defendants."[5] *Id.* at 5. In response, Defendants argue that because

---

[5] The Court need not decide whether, as Plaintiffs allege, "each Date[] of First Delinquency calculated by TXU—and provided by TXU to the consumer reporting agencies—[was] entirely inaccurate and calculated contrary to (1) the guidelines crafted by those agencies and (2) TXU's own Terms of Services." Dkt. 143 at 2. Even if the Court assumes, for the sake of argument, that each Date of First Delinquency provided by TXU was inaccurate, it has absolutely no bearing whatsoever on the outcome of this case. Plaintiffs still cannot establish a legally valid claim. As an aside, although Plaintiffs vociferously contest the specific Date of First Delinquency provided by TXU for each Plaintiff, they do not offer or otherwise identify any specific alternative dates.

12

Plaintiffs have admitted Defendants have not committed a violation under Section 1681c, "the express and sole basis for [Plaintiffs] § 1681e(a) and § 1681e(b) claims—and any purported damages caused by those claims—has been definitely proven and admitted to be false." Dkt. 137 at 21. Put another way, Defendants' position is that it does not matter when Plaintiffs' TXU accounts were removed from their credit files so long as the accounts were not reported for longer than the seven and one-half year period allowed by Section 1681c. The Court finds Defendants' reasoning convincing.

"In order to establish a *prima facie* case under § 1681e(b), a consumer must produce some evidence of an inaccuracy in her credit report." *Toliver v. Experian Info. Sols., Inc.*, 973 F. Supp. 2d 707, 715 (S.D. Tex. 2013) (citing *Washington v. CSC Credit Servs., Inc.*, 199 F.3d 263, 267 n.3 (5th Cir. 2000)). "A credit entry may be 'inaccurate' within the meaning of the statute either because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998) (citation omitted). Moreover, "the plaintiff must show that the inaccuracy resulted from a negligent or willful failure to use reasonable procedures when the report was prepared." *Id.* at 896 (citation omitted).

It deserves repeating that it is uncontested that Plaintiffs' TXU accounts were not reported longer than seven and one-half years—the legal standard proscribed by the FCRA. Given that Plaintiffs' TXU accounts were removed before the end of the allowable reporting period, Plaintiffs simply cannot demonstrate any inaccuracy in the credit reports. For this reason alone, Plaintiffs' 1681e(b) claim fails as a matter of law.

The crux of Plaintiffs' complaint seems to be that since Defendants implemented consumer-friendly policies which purge accounts from a consumer's file sooner than the required seven and one-half years, Defendants should be held responsible for not making sure that the TXU accounts were deleted from Plaintiff's credit files in accordance with those internal policies. This claim does not hold water. As courts across the country have observed, a company's failure to abide by its own internal policies does not automatically constitute a violation of the law.[6] *See, e.g., McNelis v. Pa. Power & Light Co.*, 867 F.3d 411, 418 (3d Cir. 2017) ("Absent proof of discrimination as defined by the ADA, an employer's failure to follow its own internal policies does not in itself constitute a violation of the ADA.") (citation omitted); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (holding that a prison official's failure to follow the prison's own policies, procedures, and regulations does not constitute a violation of due process if constitutional minima are nevertheless met); *Jackson v. Cain*, 864 F.2d 1235, 1251 (5th Cir. 1989) ("A state's failure to follow its own procedural regulations does not establish a violation of due process, because constitutional minima may nevertheless have been met.") (internal quotation

---

[6] In seeking to dismiss Plaintiffs' Section 1681e(b) claim, Defendants also contend that "Plaintiffs did not plead the § 1681e(b) cause of action presented in their opposition." Dkt. 145 at 1. Defendants note that Plaintiffs originally claimed that "Defendants violated 15 U.S.C. § 1681e(b) by reporting TXU accounts on Plaintiffs' consumer credit files for more than 7 years, 180 days in violation of 15 U.S.C. § 1681c," but "Plaintiffs changed course, and now argue their § 1681e(b) claim is based on Defendants' failure to remove TXU trade lines within the time periods allotted by their *internal policies*, not the FCRA." *Id.* at 1–2 (emphasis in original). The Court fully agrees with Defendants. The case theory Plaintiffs now advance is fundamentally different from the theory of liability found in the Complaint. Nonetheless, this Court need not rule against Plaintiffs solely because they are, in essence, trying to assert a new claim in their Opposition to Defendants' Motion for Summary Judgment. Even if the Court broadly interprets the Complaint's Section 1681e allegations as encompassing Plaintiffs' current theory of liability, the claim still fails as a matter of law.

marks and citation omitted). Not surprisingly, Plaintiffs cannot cite a single case supporting their novel interpretation of Section 1681e(b).

The absurdity of Plaintiffs' position is apparent when one considers what would happen if, as Plaintiffs contend, a company could be held liable for not removing credit reports earlier than the seven and one-half year time period allowed under Section 1681e(b). Under Plaintiffs' theory, a company that adhered to an internal policy to remove delinquent accounts within seven and one-half years would never face liability under Section 1681e(b). But a company with an internal policy to purge accounts within six years could face liability if the accounts were not purged until six and one-half years had elapsed. This outcome makes no sense. In both scenarios, the companies have fully complied with the seven and one-half year period allowed by Section 1681c. But Plaintiffs would nonetheless impose liability under Section 1681e(b) on the company that removed the accounts earlier in time. To ensure that the law is applied sensibly, the Court holds that as long as account information is removed within the seven and one-half year period mandated under Section 1681c, there is no violation under Section 1681e(b) for failure to remove accounts earlier than permitted by statute. Summary judgment is, therefore, appropriate on the Section 1681e(b) claim.

## CONCLUSION AND RECOMMENDATION

For the reasons stated above, the Court recommends Defendants' Motion for Summary Judgment (Dkt. 133) be GRANTED and the case dismissed.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections

pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 30th day of April, 2019.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE